UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHLEEN PLUMMER,

                Plaintiff,         1:12-cv-628
                                                    (GLS/RFT)

      v.

COUNTY OF WARREN, NEW
YORK et al.,

                Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Brennan, White Law Firm          DANIEL J. STEWART, ESQ.
163 Haviland Road
Queensbury, NY 12804

**FOR THE DEFENDANTS:**
Lemire, Johnson Law Firm         APRIL J. LAWS, ESQ.
P.O. Box 2485                            GREGG T. JOHNSON, ESQ.
2534 Route 9                              MARY ELIZABETH KISSANE,
Malta, NY 12020                      ESQ.

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Kathleen Plummer commenced this action against

defendants County of Warren, New York and the Warren County Sheriff's

Department pursuant to 42 U.S.C. § 1983, alleging violations of her First Amendment right of free speech, and pursuant to Article 78 of the New York Civil Practice Law and Rules, alleging that her termination was arbitrary and capricious, and/or an abuse of discretion.[1] (Compl., Dkt. No. 1.) Pending before the court are the parties' cross motions for summary judgment, (Dkt. Nos. 15, 19), and Plummer's motion to amend/correct the complaint, (Dkt. No. 29). For the reasons that follow, the motions are denied.

## II. Background[2]

In April 2004, Plummer was hired by Warren County, specifically the Warren County Sheriff's Office, to work as a Corrections Officer at the Warren County Jail. (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 15, Attach. 35; Pl.'s Statement of Material Facts (SMF) ¶ 2, Dkt. No. 20.) On three occasions, beginning in July 2011, Plummer was the subject of disciplinary action for conduct she engaged in while employed by the

---

[1] Since the time the parties filed their cross motions for summary judgment, they have stipulated to discontinue all of Plummer's gender discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e–2000e-17. (Dkt. No. 25.) These claims are therefore dismissed.

[2] Unless otherwise noted, the facts are not in dispute.

2

Warren County Sheriff's Office.

First, in July 2011, an investigation commenced regarding allegations that Plummer had provided a pen and paper to an inmate without authorization. (Defs.' SMF ¶ 25.) The next month, Plummer was served with disciplinary charges in connection with that incident, accusing her of violating Sheriff's Office rules and regulations regarding the providing of contraband to inmates. (*Id.* ¶¶ 31, 34.) A disciplinary hearing began on September 30, 2011. (*Id.* ¶ 36.)

In the meantime, on October 5, 2011, prior to the conclusion of the hearing initiated by the first set of charges brought against Plummer, she was served with a second set of disciplinary charges, alleging that she was insubordinate and disrespectful towards her supervisor. (*Id.* ¶¶ 38-41, 43-44.) Specifically, Plummer was accused of slouching with her hands in her pockets while being addressed by a superior, and failing to follow direct orders to respond to her superior's questions. (Pl.'s SMF ¶ 24.)

The final incident resulting in discipline stemmed from an encounter Plummer had in her home with Officer Fish of the Fort Edward Police Department on October 11, 2011. (*Id.* ¶ 27; Defs.' SMF ¶¶ 46-48.) Officer Fish had gone to Plummer's home to speak with Plummer and her

husband regarding an interaction Fish had with the Plummers' son. (Dkt. No. 15, Attach. 7 at 36-37.) While at Plummer's home, Officer Fish indicated to Plummer and her husband that he was planning to seek employment with the Warren County Sheriff's Office. (Pl.'s SMF ¶ 27; Defs.' SMF ¶ 56.) In response, Plummer expressed that Fish should "think twice" before accepting employment with the Sheriff's Office, because she had concerns about activities at the Warren County Jail, there was a lawsuit pending against the Sheriff, and the Sheriff engages in misconduct that goes unaddressed. (Pl.'s SMF ¶¶ 27-28; Defs.' SMF ¶¶ 57-59; Dkt. No. 15, Attach. 7 at 43.)

As a result of this incident, disciplinary charges were brought against Plummer on October 13, 2011 for making comments that brought discredit to the Warren County Sheriff's Office, and for her subsequent dishonesty regarding the incident. (Defs.' SMF ¶¶ 48-51.) Ultimately, the hearing officer recommended sustaining several of the misconduct charges brought against Plummer and terminating her employment. (Dkt. No. 15, Attach. 16 at 21-22.) Subsequently, on January 9, 2012, these recommendations were adopted by Warren County Sheriff Nathan York, and Plummer was terminated. (Dkt. No. 15, Attach. 17 at 2.)

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. First Amendment Retaliation Standard

Defendants argue that they are entitled to summary judgment on Plummer's claim that she was terminated in retaliation for exercising her First Amendment free speech rights, because her speech was not constitutionally protected, and, even if it were, Plummer cannot demonstrate a causal connection between her speech and her termination. (Dkt. No. 15, Attach. 28 at 13-20.) Plummer argues that defendants' motion should be denied, and her cross motion for summary judgment on this claim should be granted, because she was terminated in retaliation for engaging in speech that is protected by the First Amendment. (Dkt. No. 19, Attach. 15 at 13-19.) For the reasons that follow, the court finds that Plummer's speech was protected First Amendment activity, but that

disputed facts on the issue of causation render summary judgment for either party inappropriate.

"[W]hile the government enjoys significantly greater latitude when it acts in its capacity as employer than when it acts as sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001). Accordingly, a public employee may establish a First Amendment retaliation claim against her governmental employer under 42 U.S.C. § 1983 upon proof "that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129-30 (2d Cir. 2013) (internal quotation marks and citations omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983)).

Nevertheless, if a plaintiff shows that the three factors are satisfied, the government may still avoid liability if it makes one of two showings. "The government may either (1) demonstrate by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004); *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). With these principles in mind, the court turns to the matter at hand.

1. *Protected Speech*

The First Amendment protects a public employee's speech only when it is "made as a citizen on matters of public concern rather than as an employee on matters of personal interest." *Garcia*, 706 F.3d at 130 (internal quotation marks and citation omitted). "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim,*

7

342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick,* 461 U.S. at 146). As mentioned above, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. While the employee's motive "may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009). In addition, a public employee's speech is only protected to the extent that it is made as a citizen, as opposed to as an employee "pursuant to [one's] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

In the present case, defendants contend that Plummer's remarks to Officer Fish merely constituted her personal employment grievances, and were made in her capacity as an employee, and thus did not constitute protected speech under the First Amendment. (Dkt. No. 15, Attach. 28 at 13-19.) Although Plummer's statements relate generally to employment at the Warren County Sheriff's Office, they nevertheless touch on matters of public concern. Notably, the speech alleges potential wrongdoing and illegal conduct and policies of the Sheriff, both past and ongoing, and pertains to Plummer's criticisms of Sheriff York, an elected official. (Dkt.

8

No. 15, Attach. 7 at 43-47; Dkt. No. 15, Attach. 14 at 2; Dkt. No. 15, Attach. 16 at 17-19; Dkt. No. 15, Attach. 22 at 8-10); *see Sousa*, 578 F.3d at 171-74; *Harman v. City of N.Y.*, 140 F.3d 111, 118 (2d Cir. 1988) ("[D]iscussion regarding current government policies and activities is perhaps the paradigmatic matter[] of public concern.") (internal quotation marks and citation omitted). Further, there is no indication in the record that Plummer's off-duty remarks to Officer Fish were made pursuant to her official job duties, or that she had any professional duty or responsibility as a corrections officer to discuss the above issues with him. *See Garcetti*, 547 U.S. at 421-22. In fact, Fish testified that he was at the Plummers' home on an unrelated matter, to discuss with them an encounter he previously had with their son. (Dkt. No. 15, Attach. 22 at 5-8.) Accordingly, as a matter of law, Plummer's speech is protected under the First Amendment.

    2. *Causation*

The other element in dispute here is whether there exists a causal relationship between the protected speech and the adverse employment action. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012).

"The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Id.* at 110. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Id*. (internal citation omitted).

Defendants argue that Plummer cannot establish a causal connection between her speech and her termination, because the disciplinary proceedings against Plummer had already commenced by the time she made any constitutionally protected statements to Officer Fish. (Dkt. No. 15, Attach. 28 at 19-20.) Plummer contends that, although the process that ultimately culminated in her termination was underway at the time she made the statements in question, defendants only sought her termination after the charges related to her speech were filed. (Dkt. No. 19, Attach. 15 at 18-19.) As discussed below, there is a question of fact regarding the causation element in this case which prevents the entry of summary judgment.

The record demonstrates that when Plummer's disciplinary hearing began in September 2011, at which point only the first set of charges had been brought against her, defendants were seeking only a two-month suspension. (Dkt. No. 15, Attach. 20 at 7-8.) In the meantime, Plummer received the two additional sets of disciplinary charges mentioned above, including the charges related to her off-duty remarks to Officer Fish. While the hearing officer's recommendations, which were subsequently adopted by Sheriff York, seem to indicate that Plummer's speech did factor in, to some extent, to her ultimate termination, it is unclear what effect the speech had on the ultimate decision to terminate, or whether Plummer would have been terminated absent her protected speech. (Dkt. No. 15, Attach. 16 at 17-19; Dkt. No. 15, Attach. 17 at 2.) Simply put, the disputed material facts contained in the record preclude granting summary judgment to either party on this issue. *See Morris*, 196 F.3d at 110 ("Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision.")[3]

---

[3] Defendants also argue, in passing, that Plummer has failed to demonstrate the existence of a custom or policy that would impose municipal liability on Warren County or the Warren County Sheriff's Office.

### 3. Government Defenses

Defendants contend that, even if Plummer has established a First Amendment freedom of speech claim, they are nevertheless entitled to summary judgment because Plummer's "interest in bad mouthing the [Warren County Sheriff's Office] administration was outweighed by the [Warren County Sheriff's Office]'s interest in efficient public services through the maintenance of an efficient and disciplined law enforcement group." (Dkt. No. 15, Attach. 28 at 18-19); *see Pickering*, 391 U.S. at 568; *Locurto*, 264 F.3d at 166. Although the court acknowledges defendants' considerable interest in maintaining an efficient and effective sheriff's office, and notes that the record suggests that Plummer's speech may have been driven, in part, by personal motives, upon a thorough balancing, defendants have failed to meet their burden of "demonstrating that the speech threatens to interfere with government operations." *Lewis*, 165

---

(Dkt. No. 15, Attach. 28 at 20-21.) However, this argument is without merit, as Plummer's termination was explicitly based, at least in part, on several policies and regulations promulgated by Warren County and the Warren County Sheriff's Department, (Dkt. No. 15, Attach. 16 at 2-22; Dkt. No. 15, Attach. 17), thus satisfying the custom or policy requirement for establishing municipal liability. *See Mayo v. Cnty. of Albany*, No. 07-cv-823, 2009 WL 935804, at *2 (N.D.N.Y. Apr. 3, 2009); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978).

F.3d at 162; see *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011). Defendants have offered nothing more than a conclusory assertion that Plummer's remarks "had the real potential to undermine [Sheriff's Office] operations by deterring a candidate for employment."[4] (Dkt. No. 15, Attach. 28 at 19.) This defense is therefore unavailing.

## B. Article 78 Petition

Plummer's second "cause of action" is one brought pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking to overturn her termination as arbitrary and capricious, or as an abuse of discretion. (Compl. ¶¶ 38-41.) However, the court's jurisdiction over Plummer's § 1983 claim does not automatically imbue it with jurisdiction over her cause of action pursuant to Article 78, and as such, her Article 78 cause of action is not properly before this court.

Section 7804(b) of the CPLR provides that "[a] proceeding under this article shall be brought in the *supreme court*." N.Y. C.P.L.R. § 7804(b) (McKinney 2013) (emphasis added). This language has been construed as

---

[4] On this point, it is worth noting that no such deterrence occurred in this case, as Fish began his employment with the Warren County Sheriff's Office shortly after his encounter with Plummer. (Dkt. No. 15, Attach. 22 at 10.)

13

limiting the supplemental jurisdiction of the district courts. *See Gebman v. New York*, No. 07-cv-1226, 2008 WL 2433693, at *3 (N.D.N.Y. June 12, 2008); *Beckwith v. Erie Cnty. Water Auth.*, 413 F. Supp. 2d 214, 226-27 (W.D.N.Y. 2006) (collecting cases standing for the proposition that "[f]ederal courts have . . . consistently declined to exercise supplemental jurisdiction over [Article 78] claims"); *Cartagena v. City of N.Y.*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003). In other words, this court has no original or supplemental subject matter jurisdiction over Plummer's Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court. *See Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005); *Cartagena*, 257 F. Supp. 2d at 710. Federal courts have therefore consistently declined to exercise supplemental jurisdiction over such claims. *See, e.g., Lucchese v. Carboni*, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998) ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there."). Accordingly, the court declines to exercise supplemental jurisdiction over Plummer's Article 78 claim, and such claim is therefore

dismissed.

## C. Motion to Amend

Plummer has also moved for leave to amend her complaint in order to add a claim for a declaratory judgment that Correction Division Regulation 029, which was cited at least as a partial basis for her termination, is unconstitutional on its face. (Dkt. No. 29, Attach. 4 at 2-4.) Defendants argue that Plummer should not be granted leave to amend at this late juncture because there has been an undue delay in her seeking leave to amend, and permitting an amendment would prejudice defendants. (Dkt. No. 32, Attach. 3 at 6-9.) For the following reasons, Plummer's motion to amend is denied.

Rule 15(a) provides that where a party seeks to amend his pleading before trial, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Laskowski v. Liberty Mut. Fire Ins. Co.*, No. 5:11-cv-340, 2013 WL 5127039, at *2 n.3 (N.D.N.Y. Sept. 12,

2013) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Id.* at *2 (internal quotation marks and citation omitted). Further, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Here, Plummer did not seek permission to move for modification of the pretrial scheduling order, and did not seek leave to amend her complaint until February 26, 2014, (Dkt. No. 29)—approximately sixteen months after the November 1, 2012 deadline by which pleadings were to be amended pursuant to the court's pretrial scheduling order, (Dkt. No. 9). In support of her motion, Plummer has not provided any justification for this late filing, instead arguing that her proposed amendment would not prejudice defendants. (Dkt. No. 29, Attach. 4 at 4-5.) Plummer has thus failed to demonstrate good cause for her proposed amendment at this late stage, and therefore her motion for leave to amend the complaint is denied.

16

*See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 15) is **GRANTED IN PART** to the extent that Plummer's claim pursuant to Article 78 is **DISMISSED**, and **DENIED** in all other respects; and it is further

**ORDERED** that Plummer's cross motion for summary judgment (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that Plummer's claims pursuant to Title VII are **DISMISSED**; and it is further

**ORDERED** that Plummer's motion to amend (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that the case is trial ready and the Clerk shall issue a trial scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court